United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THUMBTACK, INC.,
Plaintiff,

v.

LIAISON, INC.,
Defendant.

Case No. 23-cv-02830-WHO

**ORDER GRANTING MOTION TO DISMISS IN PART**

Re: Dkt. No. 17

Defendant Liaison, Inc.'s motion to dismiss is granted in part and denied in part. Plaintiff Thumbtack, Inc.'s claim for copyright infringement is dismissed in part because it lacks specificity and needs clarification on the scope of the claim. Thumbtack's trade dress and associated Unfair Competition Law claims also lack specificity and are dismissed with leave to amend so that Thumbtack can identify with particularity the elements on Liaison's's website that allegedly violate its protected trade dress.

**BACKGROUND**

Thumbtack is the owner and operator of www.thumbtack.com ("Thumbtack Website"), a website that connects consumers seeking services with industry professionals who offer a wide range of services, *e.g*., painting, appliance repair, home cleaning, gardening, wedding planning, and tax preparation. Compl. ¶¶ 3-4. It alleges that Liaison operates multiple websites that compete with Thumbtack (*e.g.*, www.tutors.com, www.lessons.com, www.fash.com, www.thervo.com, and www.homeguide.com) and asserts that these "Infringing Sites" copy the content of Thumbtack's website, "unlawfully display Thumbtack's exact copyrighted content and then mimic the overall visual trade dress" of Thumbtack's site on Liaison's competing Infringing Sites. *Id.* ¶¶ 5-8. Thumbtack specifically alleges that Liaison has copied the following copyrighted information from its site:

a. The text displayed throughout the Thumbtack Website;

b. The Non-Discrimination Policy on the Thumbtack Website;

c. Safety Page on the Thumbtack Website;

d. Privacy Policy on the Thumbtack Website; and

e. The unique sequence of text and questions used by Thumbtack to facilitate the registration of professionals on the Thumbtack Website

Compl. ¶¶ 29-30. Thumbtack also alleges Liaison has copied elements of Thumbtack's protected trade dress from its website, including:

a. A unique font/typography that was created for Thumbtack's exclusive use

b. A unique color scheme involving "Thumbtack blue" text and navigation buttons on white page background

c. Unique custom-made icons

d. Unique page layouts, diagrams, menus, and a distinct onboarding flow for professional users.

Together "the unique font/typography, colors, icons, page layouts, diagrams, menus, and a distinct onboarding flow for professional users make up design elements of Thumbtack's Website [to] consist of protectable trade dress ("Thumbtack Trade Dress")." *Id.* ¶¶ 32-33.

In the Complaint, Thumbtack identified and attached examples of Liaison's alleged use of Thumbtack's Copyrighted Materials and Trade Dress elements. *Id.* ¶¶ 57-58 & Exs. 3-4. Based on the identified conduct, Thumbtack sued Liaison for: (a) copyright infringement, in violation of the Copyright Act of 1796 (17 U.S.C. §§ 101 *et seq.*); (b) trademark infringement, false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and (c) violation of California Business & Professions Code § 17200, *et seq.* Liaison has moved to dismiss each of the claims, Dkt. No. 17, arguing that the claims fail because Thumbtack cannot claim copyright over the language it identified and cannot protect as trade dress "basic, functional website layouts and designs." Mot. at 17.[1]

---

[1] In support of its motion, and through the Declaration of Meng Zhong (Dkt. No. 17-1), Liaison asks me to take judicial notice of Thumbtack's copyright registration and current versions of the parties' websites. Thumbtack does not address or object to notice of these documents and they are noticeable under the doctrine of incorporation, given Thumbtack's central reliance on them in its

United States District Court
Northern District of California

**LEGAL STANDARD**

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. See *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

---

Complaint. *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018) (judicial notice is appropriate if the complaint "refers extensively" to the document or the document forms "the basis" of the plaintiff's claim). Thumbtack does object to judicial notice of the contents "External Materials," offered by Liaison, including other parties' websites/results of google searches (Zhong Decl., Ex. 2), a screenshot from a Thumbtack website in 2018 (Zhong Decl., Ex. 6), and an archived version of a Liaison website from 2015 (Zhong Decl., Ex. 7). Oppo. at 6-8. I agree with Thumbtack that it is inappropriate to take judicial notice of the External Materials that were not referenced in the Complaint and have not been authenticated.

## DISCUSSION

### I. COPYRIGHT

#### A. Legal Standard

"To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Pasillas v. McDonald's Corp*., 927 F.2d 440, 442 (9th Cir. 1991). If there is no direct evidence of copying, a plaintiff may prove this element through circumstantial evidence that (1) the defendant had access to the copyrighted work prior to the creation of defendant's work and (2) there is substantial similarity of the general ideas and expression between the copyrighted work and the defendant's work. *Sid & Marty Krofft Television Prods., Inc., v. McDonald's Corp*., 562 F.2d 1157, 1162 (9th Cir. 1977), superseded on other grounds by 17 U.S.C. § 504(b).

#### B. Application

Thumbtack alleges Liaison violates it copyright when it copied:

a. The text displayed throughout the Thumbtack Website;

b. The Non-Discrimination Policy on the Thumbtack Website;

c. Safety Page on the Thumbtack Website;

d. Privacy Policy on the Thumbtack Website; and

e. The unique sequence of text and questions used by Thumbtack to facilitate the registration of professionals on the Thumbtack Website

Compl. ¶¶ 29-30.

As an initial matter, Thumbtack cannot base its copyright act claim on "text displayed throughout" the Website (item a. above). It must identify actionable copying with specificity under Rule 8. Similarly, Thumbtack cannot base this claim on copying of the "unique sequence of text and questions used by Thumbtack" without identifying with specificity the specific sequences – present on the registered version of Thumbtack's website – that was used by Liaison on specifically identified portions of the Liaison sites. *See, e.g., Livingston v. Morgan*, No. C-06-2389 MMC, 2006 WL 8459602, at *3 (N.D. Cal. July 31, 2006) ("A complaint for copyright infringement fails to satisfy the requirements of Rule 8(a) if it does not allege the specific

copyrighted work that has been infringed."). It may be that Thumbtack is claiming substantial copying of its website in its entirety – and aims to prove that Liaison copied Thumbtack's website in its entirety or otherwise copied enough original text considering the entirety of Thumbtack's site to be liable for infringement. But it is not clear whether that is the basis of Thumbtack's copyright infringement claim or whether Thumbtack is alleging only that Liaison copied specific portions (pages or chunks of pages) from its website. On amendment, Thumbtack shall make its theory of copyright infringement clear; namely, whether it is claiming wholesale copying of its website or simply copying of discrete portions.[2]

The Complaint, as noted above at items b. through e., identifies a few specific portions of text from Thumbtack's website that it claims Liaison copied almost verbatim: Thumbtack's "Safety Page," "Non-Discrimination Policy," and "Privacy Policy." Compl. ¶ 57. Additional examples are identified in Exhibit 3, including "Smart Hiring," "Review the pro's profile," "Information We Collect," "When Thumbtack Discloses Your Information," "Updating, Deleting and Correcting Your Information," and "Help for pro" and "Help for customer" pages. Dkt. No. 1-3. I will consider only these portions of Thumbtack's website as falling under the copyright claim.

As an initial matter, Thumbtack contends Liaison cannot – in its motion to dismiss – challenge the copyrightability of the text that Thumbtack claims Liaison improperly copied because copyrightability is a question of fact and usually not appropriate for determination at the motion to dismiss stage. *See, e.g.*, *Tracy Anderson Mind & Body, LLC v. Roup*, No. CV 22-4735-RSWL-EX, 2022 WL 17670418, at *3 (C.D. Cal. Dec. 12, 2022) ("motion to dismiss arguments

[2] Relatedly, Liaison argues repeatedly that Thumbtack cannot claim copyright protection over the selection and arrangement of the images and text on Thumbtack's website because Thumbtack's copyright registration covered only the text of Thumbtack's site and not, for example, "[s]election, coordination, and/or arrangement of" "text and photographs." Mot. at 2, 7, 9 & Ex. 1 (registration); Reply 5-6; *see also* Compendium of U.S. Copyright Office Practices § 1009.6(A) (3d ed. 2021) (hereafter "Compendium"); *VHT, Inc. v. Zillow Grp., Inc.*, 69 F.4th 983, 990 (9th Cir. 2023) (the Compendium is "a non-binding administrative manual," that can be followed to the "extent it has the 'power to persuade.'" (quoting Georgia v. Public.Resource.Org, Inc., 140 S. Ct. 1498 (2020)). Thumbtack did not address this argument in its opposition or identify any caselaw in support of its ability to claim copyright protection over the selection and arrangement of images and text, despite its limited copyright in the text of its site.

United States District Court
Northern District of California

that copyrighted works do not qualify for copyright protection based on a 'detailed factual analysis' of the works" are inappropriate). That is generally true, but the challenges brought by Liaison are not based on "detailed" factual analyses to determine substantial similarities between the two websites or to determine whether the general subject matters are copyrightable. *See id*. at *3 (explaining that whether the "functional exercise movements" combining "routines combining choreography, fitness, and cardiovascular movement" were ultimately "unprotectable 'ideas' or 'processes'" would require a "detailed factual analysis unfit for ruling on a motion to dismiss"); *see also Thomson v. HMC Grp.*, No. CV1303273DMGVBKX, 2014 WL 12589312, at *3 (C.D. Cal. Feb. 18, 2014) (determining whether "technical drawings and architectural works" are unprotected as "(1) functional, (2) designs of interior rooms, and (3) merely ideas and concepts" not appropriate to determine on a motion to dismiss).

I will consider each of Liaison's arguments below.

**1. Non-Discrimination Policy**

Liaison argues that it cannot be liable as a matter of law for alleged copying of Thumbtack's non-discrimination policy because only "thin" copyright protection extends to copyrighted "policies or forms," and infringement will be found only where the defendant used "virtually identical text" or copied the "arrangement" and manner of presentation. Mot. at 6-7 (citing cases).[3] Despite admitted similarities in what Liaison claims is "stock language" used in the Non-Discrimination Policies on Liaison's and Thumbtack's sites, Liaison argues that the presentation of its Non-Discrimination Policy was significantly different than the presentation on Thumbtack's site – *e.g.*, Liaison used bullet points to present its information – making the presentations on the different websites substantially dissimilar and defeating protection as a matter of law. Whether the use of bullet points or other formatting differences means the policies are not

[3] *See, e.g., Rassamni v. Fresno Auto Spa, Inc.*, 365 F. Supp. 3d 1039, 1046–47 (E.D. Cal. 2019) ("forms are sometimes characterized as a type of unprotectable functional work. . . . Works containing strong functional elements are entitled only to 'thin' copyright protection."); *Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d 1095, 1102 (N.D. Cal. 2015) ("It is undisputed that Digby has a registered copyright for the text of the bandago.com website. . . . It is also undisputed that the Corporate Defendants used language copied almost verbatim from Digby's website on the Image website (though they did so before the copyright was registered).").

United States District Court
Northern District of California

otherwise sufficiently or substantially similar depends upon a weighing of the similarities between the text and the differences in the formatting, and is generally not appropriate to resolve on a motion to dismiss. *See Zindel as Tr. for David Zindel Tr. v. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158, 159 (9th Cir. 2020) (noting courts should be "cautious" before dismissing cases for lack of substantial similarity on a motion to dismiss, unless "the similarities between the two works are only in uncopyrightable material or are de minimis."); *see also Changing World Films LLC v. Parker*, No. CV229021DMGPVCX, 2023 WL 8044348, at *5 (C.D. Cal. Sept. 12, 2023) (same).

Thumbtack says that the text of its Non-Discrimination Policy allegedly copied by Liaison (*see* Ex. 3, Dkt. No. 1-3; Compl. ¶ 39) is protectible as "original" content. Liaison argues that Thumbtack simply used unprotectable "form" language that basic internet searches demonstrate is routinely used by thousands of companies and, therefore, not protectible as original content. But the internet searches Liaison relies on are not judicially noticeable. *See supra*. Whether the content at issue is original, protectible content or unprotected form language must be assessed based on evidence and cannot be resolved at this motion to dismiss stage. *See, e.g., Pallen Martial Arts, LLC v. Shir Martial Arts, LLC*, No. 13-CV-05898-JST, 2014 WL 2191378, at *6 (N.D. Cal. May 23, 2014 (denying motion to dismiss, despite defendant allegation "that the contract at issue here is cobbled together from other form contracts" because that determination was inappropriate on motion to dismiss stage); *see also Rassamni v. Fresno Auto Spa, Inc.*, 365 F. Supp. 3d 1039, 1049 (E.D. Cal. 2019) (liability disclaimer was "still entitled to thin protection," and court could not determine "as a matter of law that thin protection would not bar the alleged infringement," given the alleged infringer's use of "virtually identical" language that changes only a few words and added additional text).

**2. Smart Hiring Text**

Thumbtack's next example of copying is Liaison's use of the phrase "Smart Hiring on HomeGuide" superimposed on a stock image of someone making measurements where Thumbtack's copyrighted website uses the phrase "Smart Hiring on Thumbtack" superimposed on a photo of a group taking notes. Liaison argues that because Thumbtack's copyright extends only

United States District Court
Northern District of California

to "text," its copyright cannot extend to use of similar stock images on the competing sites. Liaison also argues that the phrase "Smart Hiring" is not protectible because copyright protection does not extend to use of "titles, short phrases, standard navigational text, or other insufficiently creative or functional elements." Mot. at 7 (citing Compendium § 1006.1); *see also* 37 C.F.R. § 202.1 ("examples of works not subject to copyright and applications for registration of such works cannot be entertained [include] (a) Words and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; mere listing of ingredients or content.").

In response, Thumbtack does not address the Compendium or whether "SmartHiring" is not an unprotected short phrase, title, or slogan. Instead, Thumbtack argues that Liaison is impermissibly attempting to "parse" discrete elements from "Thumbtack's Copyrighted Material" as a whole, which is inappropriate because Thumbtack is claiming copyright protection for the "entirety of the content of its website, including the selection and arrangement of the images and text displayed throughout." Oppo. at 10; *see also L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 849 (9th Cir. 2012), *as amended* ("Original selection, coordination, and arrangement of unprotectible elements may be protectible expression.").

There are two problems with this argument. First, while it may be possible to register the selection and arrangement of uncopyrightable content for a website, in order to do that Thumbtack would have had to disclose that intent in its application; there is no evidence Thumbtack did so. *See* Compendium § 1009.6(A) ("If the applicant intends to register the authorship involved in selecting, coordinating, and/or arranging the content that appears on a website, the applicant may use any of the terms listed below . . . . Selection, coordination, and/or arrangement of [specify material that has been selected, coordinated, and/or arranged, *e.g.* 'selection and arrangement of text and photographs'].").

Second, "[e]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir.2003); *see also Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) ("when similar features in a [copyrighted work] are 'as a practical matter indispensable, or at least

standard, in the treatment of a given [idea],' they are treated like ideas and are therefore not protected by copyright") (quoting *Frybarger v. International Business Machines Corp*., 812 F.2d 525, 530 (9th Cir.1987)).

Following *Satava*, a judge in the Central District rejected protection of an image displaying graphics of named glasses juxtaposed with a photograph of the glasses being worn by a model. *Salt Optics, Inc. v. Jand, Inc*., No. SACV10828DOCRNBX, 2011 WL 13055856, at *5 (C.D. Cal. Mar. 4, 2011). Copyright protection was denied not because the elements were unprotectable (the court recognized that "certain combinations of unprotectable elements may qualify for copyright protection (*e.g*. music notes combined together to form a composition)"), but because "'commonplace' or 'typical' combinations do not." *Id*. at *5 (quoting *Satava*, 323 F.3d at 811–12); *see also id*. ("Plaintiff's alleged website display is one such "commonplace" combination of elements. Plaintiff has asserted no allegations tending to show that Plaintiff organized these typical elements of website sales in any sort of unique, creative way. Rather, Plaintiff's organization, as alleged, strikes the court as "standard, stock [and] common," [] and thus unworthy of copyright protection.").

The use of the term Smart Hiring cannot itself be protected. Its placement over a stock photograph of someone using design tools does not amount to anything more than a commonplace combination that is not protectable as a matter of law.

**3. Review the Pro's Profile/Privacy Policy/Information We Collect/When [Company] Discloses Your Information and Updating/Deleting and Correcting Your Information**

As with the Non-Discrimination Policy, there are a few sentences within the Review the Pro section that could be considered copied verbatim, but it does not appear that Liaison copied the whole segment or even whole sections (although there are obvious similarities between the headings used). The Privacy Policy, in the examples provided by Thumbtack, appears to copy even more text from the Thumbtack site (assuming the truth of Thumbtack's allegations), as almost the whole section on Liaison's cite appears to use materially identical language to Thumbtack's Privacy Policy. Finally, the Information We Collect, When [Company] Discloses Your Information, and Updating/Deleting and Correcting Your Information segments from

Liaison's sites provided by Thumbtack are close to verbatim to the text segments on the Thumbtack site.

As above, whether these segments are unprotected "stock language" that is routinely used by many sites – and as a result, not protectible – or whether any true copying of "original language" with minor differences is sufficient to show copyright violation, cannot be resolved on a motion to dismiss.

**4. Help Pages**

Finally, Thumbtack alleges impermissible copying of its help pages, for the pros and for the end-users. Those pages list icons, with three out of four identical titles on both sites. *E.g.*, "Getting started," "Projects," and "Messaging and Reviewing Pros." Thumbtack alleges copying *only* of the titles on those pages. As Liaison argues, under the Compendium the Copyright Office has determined that certain elements of a website are not copyrightable, including: (1) "[f]unctional design elements"; (2) "[t]he layout, format, or 'look and feel' of a website"; and (3) "[c]ommon, unoriginal material, such as names, icons, or familiar symbols." Compendium § 1007. Liaison also notes that it uses different icons and different phrases for a few of the help topics.

Thumbtack wholly fails to address this argument in its opposition. If Thumbtack is only alleging copying of the titles, that would appear to run afoul of the Compendium. If Thumbtack is alleging impermissibly copying something more from these pages, that is not clear.

Therefore, the copyright claim regarding the SmartHiring text and the Help Pages is DISMISSED. Thumbtack is given leave to amend to identify with more specificity whether it claims copyright protection over the text of its website in its entirety. The copyright act claim with respect to the policies (including the Non-Discrimination Policy, and the Review the Pro's Profile/Privacy Policy/Information We Collect/When [Company] Discloses Your Information and Updating/Deleting and Correcting Your Information pages) remains.

## II. TRADE DRESS

### A. Legal Standard

"In addition to protecting registered marks, the Lanham Act, in § 43(a), gives a producer a cause of action for the use by any person of 'any word, term, name, symbol, or device, or any

combination thereof ... which ... is likely to cause confusion ... as to the origin, sponsorship, or approval of his or her goods....'" *Wal-Mart Stores, Inc. v. Samara Bros*., 529 U.S. 205, 209 (2000) (quoting 15 U.S.C. § 1125(a)). "Trade dress involves the total image of a product and may include features such as size, shape, color, color combinations, texture, or graphics[,]" and "protection is broader in scope than trademark protection, both because it protects aspects of packaging and product design that cannot be registered for trademark protection and because evaluation of trade dress infringement claims requires the court to focus on the plaintiff's entire selling image, rather than the narrower single facet of trademark." *Vision Sports, Inc. v. Melville Corp*., 888 F.2d 609, 613 (9th Cir. 1989).

To prove a trade dress infringement claim, plaintiff must prove: "(1) the trade dress is inherently distinctive or has acquired distinctiveness through secondary meaning; (2) there is a likelihood that the public will be confused by the infringing use; and (3) the trade dress is nonfunctional." *Stephen W. Boney, Inc. v. Boney Servs., Inc*., 127 F.3d 821, 828 (9th Cir. 1997). In evaluating a trade dress claim, a court must not focus on individual elements, "but rather on the overall visual impression that the combination and arrangement of those elements create." *Clicks Billiards, Inc. v. Sixshooters, Inc*., 251 F.3d 1252, 1259 (9th Cir.2001). "Trade dress is the composite tapestry of visual effects." *Id*.

**B. Application**

Liaison argues that Thumbtack fails to identify the protected aspects of its trade dress with sufficient specificity. In *Sleep Sci. Partners v. Lieberman*, No. 09-04200 CW, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010), the court dismissed with leave to amend a website trade dress claim based, as here, on the alleged misappropriation of the "look and feel" of a site "including, but not limited to, the size and location of text, the size and location of graphics, the features that it offers and the location of hyperlinks of those features." *Id*. The court dismissed because "[a]lthough [plaintiff] has cataloged several components of its website, Plaintiff has not clearly articulated which of them constitute its purported trade dress. Notably, Plaintiff employs language suggesting that these components are only some among many, which raises a question of whether it intends to redefine its trade dress at a future stage of litigation. Without an adequate definition of

United States District Court
Northern District of California

the elements comprising the website's "look and feel," [defendant] is not given adequate notice." *Id.* at *3; *see also Salt Optics, Inc. v. Jand, Inc.*, No. SACV 10-0828 DOC, 2010 WL 4961702, at *5 (C.D. Cal. Nov. 19, 2010) (dismissing website trade dress claim because while "Plaintiffs describe these [allegedly protected trade dress] elements with a certain amount of detail, absent from the FAC is any attempt to synthesize these elements in order to describe the way that the listed elements, in conjunction, combine to create the website's protectible 'look and feel.' The lack of any such synthesis, in conjunction with Plaintiff's expressly stated intention to incorporate other elements of the website into the trade dress claim at a later stage, gives the Court pause."); *Parker Waichman LLP v. Gilman L. LLP*, No. 12-CV-4784 JS AKT, 2013 WL 3863928, at *4 (E.D.N.Y. July 24, 2013) (dismissing web site trade dress claim where plaintiff identified a few, but not all, elements and failed to "synthesize" and explain how those features "combine to create the website's protectable 'look and feel.'" (quoting *Salt Optics*, 2010 WL 4961702, at *5)).

Liaison contends that Thumbtack's Complaint suffers from the same defects. In paragraph 32 of its Complaint, and Exhibit 4, Thumbtack provides "examples" of the unique design and protected trade dress elements of its website, including:

> a. A unique font/typography that was created for Thumbtack's exclusive use;
>
> b. A unique color scheme involving "Thumbtack blue" text and navigation buttons on white page background (depicted below);
> . . .
>
> c. Unique custom-made icons (depicted below); and
>
> d. Unique page layouts, diagrams, menus, and a distinct onboarding flow for professional users.

Compl. ¶ 32. According to Thumbtack, together "the unique font/typography, colors, icons, page layouts, diagrams, menus, and a distinct onboarding flow for professional users make up design elements of Thumbtack's Website consist of protectable trade dress ('Thumbtack Trade Dress')." *Id.* ¶ 33. Examples, "including but not limited to," are then provided in paragraphs 34, 48 & 58, as well as Exhibits 1 & 4. The problem with the examples provided, in addition to not being expressly limited (the main defect in *Sleep Sci. Partners*, *supra*) is that Thumbtack does not explain what aspects of the examples provided are part of the Trade Dress and how they project an

"overall visual impression that the combination and arrangement of those elements create." *Clicks Billiards, Inc.*, 251 F.3d at 1259.

I cannot decipher what, in the screen shots provided at paragraphs 34 & 58 of the Complaint (that appear to come from different parts of the Thumbtack website), are the claimed protected elements and why. Visual elements are circled without explanation. Are these examples of "unique font/typography" or something else? Nowhere in the Complaint is the unique font/typography used by Thumbtack identified by name or otherwise. Similarly, Thumbtack claims "colors" are elements of its protected trade dress, but is that limited to its use of the "Thumbtack blue" color scheme with blue text and navigation buttons on a white background or is it broader? *Compare* Compl. ¶ 32b. *with* ¶ 34. Are the "custom-made icons" limited to the examples at paragraph 32c.? And finally, what are the "unique page layouts, diagrams, menus, and a distinct onboarding flow for professional users" Thumbtack claims Liaison is misappropriating? *See* Compl. ¶ 32d. The issue is particularly problematic with the "distinct onboarding flow" that is not described in the Complaint or identified whatsoever in Exhibits 1 or 4.

The Trade Dress claim is DISMISSED with leave to amend. On amendment, Thumbtack must identify with specificity the elements of Trade Dress present on specifically identified pages of Thumbtack's and Liaison's website that it claims are protected individually or as part of a synthesized whole that create the look and feel that Liaison has allegedly misappropriated. All protected elements must be identified, not just "examples." Thumbtack can use screen shots from its website to show the elements and how they are combined, but Thumbtack must describe what each example or set of examples shows.

Liaison complains that some of the examples provided in the current Complaint (in addition to being vague concerning the claimed elements represented in each example) are from snippets of various pages or flows on the Thumbtack website. Liaison offers, as exhibits to its Motion, full views of complete pages from the Thumbtack and Liaison sites to argue that the websites have materially different looks and feels when considered in full. *See* Zhong Decl., Exs.

United States District Court
Northern District of California

3-4. That type of analysis is rarely appropriate at the motion to dismiss stage.[4] And it is certainly premature until Thumbtack has provided a definitive list of the elements of Trade Dress that it claims are protected and a written description with annotated examples of how those elements synthesize into a protected whole.[5]

Thumbtack's Trade Dress claim is DISMISSED with leave to amend.

## III. SECTION 17200

The parties agree that the viability of this claim depends on the viability of the Trade Dress claim. For the same reasons, plaintiffs' California Business & Professions Code Section 17200 claim is DISMISSED with leave to amend.

## CONCLUSION

The motion to dismiss the Copyright Act claims is GRANTED for the copyright claims based on the "Smart Hiring" and Help Pages alleged but otherwise DENIED, except that on amendment Thumbtack shall clarify whether it is claiming wholesale copying of its website or simply copying of discrete portions. The motion to dismiss the Trade Dress and subsidiary Section 17200 claim is GRANTED with leave to amend. An Amended Complaint shall be filed within twenty one (21) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: January 22, 2024



William H. Orrick
United States District Judge

---

[4] *See Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1240 (C.D. Cal. 2014) ("A court must test the legal merits of a plaintiff's alleged trade dress at summary judgment or trial when the parties provide with all relevant, admissible evidence—not at the pleading stage when the court has little more than the plaintiff's allegations and the defendant's summary denial of them.").

[5] In its Motion, Liaison also addresses the examples Thumbtack included in Exhibit 4 to the Complaint to argue why the elements it suspects Thumbtack seeks Trade Dress protection of are unprotected functional elements or look too different on Liaison's site to cause any confusion. Mot. at 15-22. Liaison provides no authority to support addressing the non-functional/functional and lack of confusion challenges at the motion to dismiss stage, but may do so again if it challenges the amended complaint.